FILED
United States Court of Appeals
Tenth Circuit

November 17, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

GARY LEE HICKS,

     Petitioner - Appellant,

v.

ERIC FRANKLIN, Warden,

    Respondent - Appellee.

No. 07-7084

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 6:04-CV-00380-RAW-KEW)**

James L. Hankins of Ogle & Welch, P.C., Oklahoma City, Oklahoma, for Petitioner - Appellant.

Theodore M. Peeper, Assistant Attorney General (W.A. Drew Edmondson, Attorney General of Oklahoma, on the brief), Oklahoma City, Oklahoma, for Respondent - Appellee.

Before **KELLY**, **McCONNELL**, and **GORSUCH**, Circuit Judges.

**KELLY**, Circuit Judge.

Gary Lee Hicks pled guilty to murder in the second degree in violation of Okla. Stat. tit. 21 § 701.8 (1976),[1] for which he was sentenced to life imprisonment. After exhausting his state remedies, he filed a pro se federal habeas petition under 28 U.S.C. § 2254 claiming that his plea lacked a factual basis, that it was not knowing and voluntary, and that his sentence was excessive. The district court adopted the report and recommendation of the magistrate judge, denied relief, and subsequently denied a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(2). Mr. Hicks filed a renewed application for a COA in this court and we granted it on two issues that were substantially raised in his federal habeas petition: (1) whether the state trial court committed constitutional error in accepting Mr. Hicks' plea given the facts admitted by Mr. Hicks and his assertion of innocence regarding the act or acts responsible for the decedent's death, and (2) whether Mr. Hicks' plea was knowing and voluntary. We also appointed counsel to represent Mr. Hicks. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse.

## Background

The essential facts, as set forth by the magistrate judge and adopted by the

---

[1] Under the statute, homicide is murder in the second degree "[w]hen perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." Okla. Stat. tit. 21 § 701.8.

district court, are undisputed on appeal. On June 30, 2002, a Mr. Wade Edwards took ingredients to manufacture methamphetamine to the home of petitioner, Mr. Gary Lee Hicks, and asked him to "cook" some methamphetamine for him. At first Mr. Hicks refused, but eventually he agreed to cook the methamphetamine. Mr. Hicks' wife (the deceased Mrs. Theresa Hicks), his daughter Janetta, and his two grandchildren left the house while Mr. Hicks manufactured methamphetamine in his bedroom. After Mr. Hicks completed the cook, the family returned home.

Upon returning, Janetta Hicks found a jar of a post-production fluid in her bedroom. An hour and a half to two hours after the cook was finished, someone took the jar of flammable post-production fluid from Janetta Hicks' bedroom and placed it on a hot plate in the kitchen.[2] The jar then cracked, spilling the fluid. Mrs. Hicks went to the kitchen to clean it up, and while she was doing so the fluid ignited and there was a flash fire that burned both Mrs. Hicks and Mr. Hicks' niece, Stacy Hughes. Unfortunately, Mrs. Hicks chose not to go to the hospital immediately because of the illegal activities that had preceded the flash fire. Mrs. Hicks was eventually admitted to the hospital and ended up spending two weeks there before she passed away from complications arising from the extensive burns she had suffered.

---

[2] A sworn affidavit from Mr. Hicks' son-in-law, Justin Allen, states that Stacy Hughes, a niece of Mr. Hicks, placed the jar of post-production fluid on the hot plate.

Mr. Hicks was charged with first degree murder, with first degree arson providing the predicate felony. The basis of the arson allegation was that the fire was the direct result of manufacturing methamphetamine, not that Mr. Hicks willfully or maliciously set the fire. For a fire that is not maliciously or willfully set to be classified as first degree arson, the fire must occur while the accused is manufacturing a controlled dangerous substance. Okla. Stat. tit. 21 § 1401. The State faced a potential difficulty in carrying its burden of proof on this issue because the available testimony showed that the fire occurred approximately two hours after the manufacturing had been completed. Just before the trial began, therefore, the parties reached a plea agreement. The prosecutor orally amended in court the first degree murder charge to murder in the second degree on the basis that Mr. Hicks had committed an "imminently dangerous act." When the trial court asked Mr. Hicks if he understood what the State had done, Mr. Hicks responded, "I don't know what the 'dangerous act' means." The trial court then engaged Mr. Hicks in the following dialogue:

| | |
|---|---|
| The Court: | The 'dangerous act' is manufacturing methamphetamines. It's an inherently dangerous act. |
| The Defendant: | Is that a second charge? |
| The Court: | No, sir, it's just one charge, but it's the basis for Murder in the Second Degree. When you're charged with Murder in the First Degree it's what we call the 'Felony Murder Rule.' That means if you commit a murder while you're committing a felony or if someone is killed while you're committing a felony, as a result of that felony then you can be charged with Murder in the First Degree, do you understand that? |

-4-

| | |
|---|---|
| The Defendant: | Yes, sir. |
| The Court: | The same applies if you're committing an inherently dangerous act, and the State's allegation is that manufacturing methamphetamine is an inherently dangerous act, and that causes someone to die, you can be charged with Murder in the Second Degree, do you understand that? |
| The Defendant: | Yes. |

The court then inquired as to the factual basis that would support the plea.

In the dialogue that followed, Mr. Hicks admitted manufacturing methamphetamine. However, Mr. Hicks also stated that his family was gone during the manufacturing process, and that the process had been completed approximately two hours before the fire. Mr. Hicks also continuously maintained that he did not place the jar on the hot plate.

| | |
|---|---|
| The Court: | Tell me what you did. |
| The Defendant: | Well, my friend and Uncle Wade Edwards showed up at the house and had stuff with him and asked me if I wanted to cook. At first I said no, but I finally gave in. Well, before I gave in– |
| The Court: | When you say you were going to 'cook,' what are you talking about? |
| The Defendant: | Methamphetamine. |
| The Court: | Do you know how to make it? |
| The Defendant: | Yes. And before I decided to he had to wait because my wife and family and all went to go get gas for his truck, so he couldn't leave. So I went ahead and said yes. I cooked it in our bedroom. He was in there with me while I cooked it in the bedroom. It had been done—it had been finished a good hour and a half to two hours before the fire started. I have no idea who took that jar into the kitchen. |
| ............ | |
| The Defendant: | Another thing, there's also witnesses that seen who put that jar on that hot plate, sir. |

The Court:        Well, however that comes out I'm not too concerned about that right now. If you all have the chemical and you all have the fuel in the house and you were using it to manufacture drugs, it doesn't really matter who does it. The problem is it's an inherently dangerous act or it's a felony act. It could be manufacturing or endeavoring to manufacture methamphetamine. Either way, it's still a felony, and while you're committing that felony if a homicide occurs as a result of your acts the law is you're guilty of murder. Do you understand that?

The Defendant:   Yes, sir.

The court then accepted Mr. Hicks' plea. At the sentencing hearing, Mr. Hicks testified as to his relationship with his wife, that they were married for twenty-one years, and that he loved and missed her. The court nevertheless sentenced Mr. Hicks to life imprisonment. Mr. Hicks later sought to withdraw his plea, but the court denied the application. Mr. Hicks then sought a writ of certiorari from the Oklahoma Court of Criminal Appeals ("OCCA"). The OCCA denied the writ and affirmed the trial court in a summary order. Hicks v. State, No. C-2003-1026 (July 2, 2004) (unpublished order). The OCCA held in pertinent part:

> [W]e find the trial court's remarks about the amended charge did not render Petitioner's plea unknowing or involuntary under the facts of this case. The record before us shows the Petitioner was fully advised of and understood the consequences of his pleas. See Carpenter v. State, 929 P.2d 988, 998 (Okla. Crim. App. 1996); Frederick v. State, 811 P.2d 601, 603 (Okla. Crim. App. 1991).

Id. Having failed to obtain relief in state court, Mr. Hicks filed his habeas petition under 28 U.S.C. § 2254.

-6-

## Standard of Review

Because Mr. Hicks' claims now on appeal were decided on the merits by the state court, the resolution of those claims is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Mitchell v. Gibson, 262 F.3d 1036, 1045 (10th Cir. 2001). Under AEDPA, a petitioner is entitled to a writ of habeas corpus only if he can demonstrate that the adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). In determining whether the decision was contrary to or unreasonably applied clearly established federal law, we review the district court's legal analysis of the state court decision de novo. Allen v. Mullin, 368 F.3d 1220, 1234 (10th Cir. 2004); Valdez v. Ward, 219 F.3d 1222, 1230 (10th Cir. 2000).

The steps involved in applying AEDPA's standard are well settled. We first assess whether there is clearly established federal law, as set forth in the holdings of the Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If there is clearly established federal law, we then consider whether the state court decision was contrary to or involved an unreasonable application of it. Id. at 1018.

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case

differently than [the Supreme Court would] have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002); see also Maynard v. Boone, 468 F.3d 665, 669-70 (10th Cir. 2006). Furthermore, we have "recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply." House, 527 F.3d at 1018; see also Valdez, 219 F.3d at 1229-30.

With the above factual and legal framework in mind, we address Mr. Hicks' claim that, because he was not provided notice of the nature of the charge against him, his guilty plea was not knowing and voluntary under the Due Process Clause of the Fourteenth Amendment.[3]

---

[3] We reach the merits of this case, despite the fact that Mr. Hicks filed an untimely objection to the magistrate judge's report and recommendation, noting that the State did not raise Mr. Hicks' failure to file a timely objection in its argument on the merits issues. Because a failure to timely object to a magistrate's report is not jurisdictional, Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991), the State has forfeited any claim that we should not consider the appeal because of Mr. Hicks' failure to timely object. Cf. Eberhart v. United States, 546 U.S. 12, 13-14, 19 (2005) (per curiam); Kontrick v. Ryan, 540 U.S. 443, 456-57 (2004); United States v. Mitchell, 518 F.3d 740, 742 (10th Cir. 2008) (defendant's notice of appeal was untimely; government forfeited its objection by
(continued...)

Discussion

A plea cannot support a judgment of guilt unless it is voluntary under the Fourteenth Amendment.  Henderson v. Morgan, 426 U.S. 637, 644-45 (1976); Fields v. Gibson, 277 F.3d 1203, 1212-13 (10th Cir. 2002).  The Supreme Court has determined that a defendant's plea cannot be voluntary "in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  Henderson, 426 U.S. at 645 (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)); see Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) ("Where a defendant pleads guilty to a crime without having been informed of the crime's elements, [the voluntary, knowing, and intelligent] standard is not met and the plea is invalid."); Marshall v. Lonberger, 459 U.S. 422, 436 (1983).  The defendant receives "real notice" of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements.  Henderson, 426 U.S. at 644-47.

In Henderson, the Supreme Court found that a defendant's plea was not

---

[3](...continued)
failing to object).  Regardless, given our grant of a COA, the difficulty of the issues in this case, and the underlying procedural facts preceding the untimely objection to the magistrate's report and recommendation, we would apply the "interests of justice" exception to our firm waiver rule.  See Diestel v. Hines, 506 F.3d 1249, 1279 n.3 (10th Cir. 2007), cert. denied, 128 S. Ct. 2875 (2008); Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004).

voluntary because there was no evidence that the defendant understood the intent element of the crime to which he pled guilty. Id. at 646-47; Allen, 368 F.3d at 1240-41. In that case, as in this, the defendant had been charged with first degree murder, but pled guilty to second degree murder without a formal substitute charge having been filed. Henderson, 426 U.S. at 642-43. Neither defense counsel nor the court had advised the defendant that intent to cause death was an essential element of the second degree murder statute to which the defendant was pleading guilty. Id. at 640. The Supreme Court concluded that this failure to advise the defendant of such a critical element meant that the defendant lacked the notice necessary to render his plea voluntary. Id. at 647. Thus, the Supreme Court has clearly established the rule that a defendant must receive notice of all critical elements of the charge to which he pleads guilty.

By holding that Mr. Hicks' plea was voluntary, the state court in this case unreasonably applied the clearly established law set forth in Henderson. In order to establish that a plea is involuntary under Henderson, "we require a petitioner to: '(1) show that the [intent] element was a critical element of [the charge]; (2) overcome the presumption that his attorney explained this element to him at some other time prior to his guilty plea; and (3) demonstrate that, prior to his guilty plea, he did not receive notice of this element from any other source.'" Allen, 363 F.3d at 1241 (quoting Miller v. Champion, 161 F.3d 1249, 1255 (10th Cir. 1998)) (alterations in original); see Henderson, 426 U.S. at 647. We will not

-10-

apply the presumption that the attorney explained the element to the defendant (the second requirement) unless there is some factual basis in the record to support it.  Miller, 161 F.3d at 1255.

First, we conclude that the depraved mind element, which is the requisite mens rea under Oklahoma's second degree murder statute, see Okla. Stat. tit. 21 § 701.8, is a critical element of the offense to which Mr. Hicks pled guilty.  See Henderson, 426 U.S. at 647 n.18 ("[I]ntent is such a critical element of the offense of second-degree murder that notice of that element is required."); Allen, 368 F.3d at 1242 ("[W]e do not gainsay that the intent element of a criminal offense is a critical element of the charge."); Miller, 161 F.3d at 1255 ("[W]e conclude that depraved mind . . . is a 'critical' element of the offense.").  As the Tenth Circuit previously recognized in Miller, it is particularly necessary to explain the depraved mind element to a defendant because it is a complex concept.  Id.; see also United States v. Gigot, 147 F.3d 1193, 1198 (10th Cir. 1998) (finding that an explanation of the charges was constitutionally required and noting that the charges were "far from simple or straightforward").

As to the second requirement, we find that there are sufficient facts in the record to rebut the presumption that defense counsel advised Mr. Hicks of the nature of the offense to which he pled guilty.  The court did ask Mr. Hicks whether he had "talked over the charges" with his attorney, and Mr. Hicks answered in the affirmative.  Both Allen and Miller indicate that this is a factor to

be considered in determining whether there is a factual basis for the presumption that the attorney has explained the nature of the charge to the defendant. See Allen, 368 F.3d at 1243; Miller, 161 F.3d at 1255. However, when the court asked whether Mr. Hicks understood the new charge, Mr. Hicks' answer suggests that he lacked notice concerning the nature of the amended charge. In response to that inquiry, Mr. Hicks stated that he did not understand what "dangerous act" meant, indicating that his counsel had not provided adequate advice. Furthermore, the court's explanation concerning the amended charge was patently erroneous, and defense counsel remained silent. When the defense counsel hears the court affirmatively misstate the law on a critical aspect of the charge and yet fails to correct the matter, a presumption that defense counsel properly explained the charge to the defendant seems unwarranted. Therefore, although the Supreme Court in Marshall stated that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit," Marshall, 459 U.S. at 436 (quoting Henderson, 426 U.S. at 647), we doubt, under these circumstances, that we can rely on the defendant's statement that he discussed the charges with his attorney. Rather, where a defendant affirmatively indicates to the court that he does not understand a critical element of the charge against him, the presumption that a defendant has been sufficiently notified by defense counsel of what he is being asked to admit will typically be unwarranted.

In the ordinary case, a correct statement of the law from the trial judge will assuage any doubts that a defendant has not received notice of the nature of the charges against him.[4]  In this case, however, in applying Allen's third requirement, we find that Mr. Hicks did not receive true notice of the "depraved mind" element from any other source and in fact received misleading instruction from the court.  Mr. Hicks did not receive notice from the charging document[5] or from the court of the mens rea element of the charge.  To the contrary, the court improperly explained the charge to Mr. Hicks, misstating the law by entirely omitting the fact that Oklahoma's second degree murder statute contains a mens rea element.  The court stated,

> When you're charged with Murder in the First Degree it's what we call the 'Felony Murder Rule.'  That means if you commit a murder while you're committing a felony or if someone is killed while you're committing a felony, as a result of that felony then you can be charged with Murder in the First Degree.

The court then went on to say, "The same applies if you're committing an

---

[4] This is not to say that the *only* way for the court to assuage such doubts is to engage in a colloquy with the defendant.  Other remedial steps may also prove adequate to ensure a voluntary plea consistent with the Sixth Amendment, and we do not purport to suggest otherwise.

[5] As in Henderson and Miller, the information charged Mr. Hicks only with first degree murder, not murder in the second degree.  See Henderson, 426 U.S. at 642-43; Miller, 161 F.3d at 1256.  Rather, as in Miller, the State moved orally to amend the charge to murder in the second degree.  See Miller, 161 F.3d at 1256.  Therefore, because the formal charging document did not contain the murder in the second degree charge, Mr. Hicks could not have received notice from that document.  See id.

-13-

inherently dangerous act . . . and that causes someone to die, you can be charged with Murder in the Second Degree." While the court's explanation strongly suggests that the charge contained no mens rea requirement, Oklahoma courts have stated that the fourth element of the second degree murder statute is that "the conduct evinced a depraved mind in extreme disregard of human life." Palmer v. State, 871 P.2d 429, 432 (Okla. Crim. App. 1994), *overruled on other grounds by* Willingham v. State, 947 P.2d 1074 (Okla. Crim. App. 1997).

In Oklahoma, a person acts with a "depraved mind" for purposes of the second degree murder statute when "he engages in imminently dangerous conduct *with contemptuous and reckless disregard of, and in total indifference to, the life and safety of another*." Id. (emphasis added). The conduct must be "calculated to put life in jeopardy." Id. We do not dispute the State's argument that "[u]nder Oklahoma law, second degree murder requires a lack of intent." Valdez, 219 F.3d at 1245 (citing Palmer, 871 P.2d at 432). But Palmer makes it clear that the fact that second degree murder requires lack of intent does not mean that there is no mens rea element to second degree murder. Rather, while the State "need not prove that a defendant had a design to effect death or that he had an intent to injure anyone," it must "prove[] beyond a reasonable doubt" conduct evincing a "depraved mind in extreme disregard of human life." Palmer, 871 P.2d at 432. The State's argument is disingenuous to the extent it cites Valdez for the contrary. The court therefore affirmatively misstated the law by suggesting that

-14-

Mr. Hicks was guilty simply because he committed the (assertedly) imminently dangerous act of manufacturing methamphetamine. In doing so, the court denied Mr. Hicks real notice of the true nature of the charge against him. See Ivy v. Caspari, 173 F.3d 1136, 1143 (8th Cir. 1999) (finding that the defendant's guilty plea was involuntary where the judge failed to advise the defendant that the State was required to prove that the defendant intended to commit the felony underlying the felony murder charge).

We underscore that Mr. Hicks' colloquy with the judge contains no admission by Mr. Hicks that he acted with a "depraved heart," nor any acknowledgment of facts that might serve, by implication, as such an admission. This is not a case, then, where we can say that the judge's distortion of the law might have resulted in harmless error. Far from it. There is simply no indication on the record of the guilty plea proceeding that Mr. Hicks' plea can stand as an intelligent, knowing, and voluntary admission of guilt as to all elements of the crime with which he was charged. See Nash v. Israel, 707 F.2d 298, 303 (7th Cir. 1983); cf. Fed. R. Civ. P. 11(h) (applying "harmless error" standard to judge's failure to follow Rule 11 in federal court); United States v. Gandia-Maysonet, 227 F.3d 1, 5 (1st Cir. 2000).

This case is different from the cases cited by the OCCA in its summary opinion denying the petition for writ of certiorari. In Carpenter v. State, the defendant alleged that the underlying felony to his felony murder charge was

-15-

robbery with a dangerous weapon. Carpenter, 929 P.2d at 993. However, the charging document alleged the underlying felony and the defendant repeatedly stated that he understood the crimes he faced and had discussed them with counsel. Id. at 997. Unlike this case, the court did not entirely omit an element of the charged crime to a defendant who had expressed his lack of understanding. Id. Therefore, there was no basis to find that the plea was involuntary. Moreover, in Frederick v. State, the court failed to find any grounds for declaring the guilty plea involuntary because the record was devoid of any suggestion that the defendant did not understand the proceedings. Frederick, 811 P.2d at 603-04. Unlike the present case, neither Carpenter nor Frederick involved a court making a serious misstatement of a critical element of the law. The Supreme Court has stated that "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." McCarthy v. United States, 394 U.S. 459, 466 (1969); United States v. Buonocore, 416 F.3d 1124, 1138 (10th Cir. 2005). Here, unlike in Carpenter or Frederick, Mr. Hicks' plea could not have been voluntary because the court provided him with an incorrect understanding of the law in relation to the facts of his case.

In sum, the record contains no evidence to support a finding that Mr. Hicks received notice that a depraved mind was an element of murder in the second degree. Therefore, the state court unreasonably applied existing Supreme Court

-16-

precedent by refusing to apply the principles of <u>Henderson</u> to these facts, given that the context of this case is closely analogous to <u>Henderson</u>.[6]

Because Mr. Hicks did not receive adequate notice of the offense to which he pled guilty, his plea was involuntary. Accordingly, we REVERSE and REMAND with instructions for the district court to vacate its judgment of dismissal and grant the writ so as to allow Mr. Hicks to withdraw his guilty plea.

---

[6] We add that this decision should not be construed to invite collateral attacks on judgments entered on pleas of guilty. In most circumstances, the presumption that defense counsel has explained the charges to the defendant will apply because "[n]ormally, the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused." <u>Henderson</u>, 426 U.S. at 647. It is a rare circumstance to have a critical element of the charge completely misstated by the trial court. This case simply happens to present that rare situation.