**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 27, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

FRANK TRUJILLO,

     Defendant - Appellant.

No. 19-2057

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CR-02238-WJ-1)**
_____

Submitted on the briefs:[*]

Virginia L. Grady, Federal Public Defender, and Kathleen Shen, Assistant Federal Public Defender, Denver Colorado, for Defendant-Appellant.

John C. Anderson, United States Attorney, and Dustin C. Segovia, Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On September 25, 2018, Defendant pleaded guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Thereafter, the district court sentenced him to a term of 120 months' imprisonment followed by three years of supervised release. Now, Defendant appeals both his conviction and sentence. With respect to his conviction, Defendant argues his guilty plea is constitutionally invalid because he was not advised of the true nature of his charge. As to his sentence, Defendant argues the district court plainly erred by applying U.S.S.G. § 2K2.1(a)(1) to calculate his base offense level because he did not commit the instant offense "subsequent to" sustaining at least two felony convictions for crimes of violence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Defendant's conviction and remand for resentencing only.

I.

We turn first to Defendant's argument that his guilty plea is constitutionally invalid. At the time Defendant entered his plea, the law of this circuit required the Government to prove three elements to secure Defendant's conviction under 18 U.S.C. § 922(g)(1): (1) that Defendant had previously been convicted of a felony; (2) that Defendant thereafter knowingly possessed a firearm or ammunition; and (3) that the possession was in or affecting interstate commerce. *See United States v. Silva*, 889 F.3d 704, 711 (10th Cir. 2018) (citing *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017)). During the pendency of this appeal, however, the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *Rehaif* changed the established law such that, now, to secure a conviction under 18 U.S.C. § 922(g)(1), the

Government must also prove that the defendant knew "he had the relevant status" as a felon when he possessed the firearm. *Id.* at 2194; *see also United States v. Fisher*, 796 F. App'x 504, 510 (10th Cir. 2019) (unpublished) (acknowledging *Rehaif* changed the established law). Given this change in the law, Defendant argues his guilty plea is constitutionally invalid because he was not advised of the true nature of his charge. That is, the district court did not inform Defendant that, if he proceeded to trial, the Government must also prove he knew he was a felon when he possessed the firearm and ammunition.

Because Defendant did not raise this issue before the district court, we review for plain error. To establish plain error, Defendant must show there is (1) an error, (2) that is plain, and (3) which affects his substantial rights. *United States v. Samora*, 954 F.3d 1286, 1292 (10th Cir. 2020); *see also United States v. Oldbear*, 568 F.3d 814, 820 (10th Cir. 2009) (applying plain error review to due process claims raised for the first time on appeal). If Defendant establishes these three conditions, we will correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Samora*, 954 F.3d at 1293 (quoting *Benford*, 875 F.3d at 1016). We apply plain error "less rigidly when reviewing a potential constitutional error." *Samora*, 954 F.3d at 1293 (quoting *United States v. James*, 275 F.3d 1173, 1182 (10th Cir. 2001)).

The Government concedes Defendant has established the first two prongs of plain error review—that is, the district court committed error that is plain. We agree. Rule 11 of the Federal Rules of Criminal Procedure requires the court to advise a

3

defendant of "the nature of each charge to which the defendant is pleading" before accepting the defendant's guilty plea. Fed. R. Crim. P. 11(b)(1)(G). In this case, the district court did not advise Defendant that he was required to know he was a felon to be convicted under 18 U.S.C. § 922(g)(1). At the time, such knowledge was not an element of the offense. *See Silva*, 889 F.3d at 711. But when the Supreme Court decided *Rehaif*, the settled law changed, and it became clear that a defendant must be aware of his status as a felon. *Rehaif*, 139 S. Ct. at 2194. While the district court correctly applied the law as it existed at the time, the court's failure to inform Defendant of the knowledge-of-status element constitutes error that is plain on appeal. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (explaining an error is "plain" if it is "clear or obvious" at the time of the appeal). Accordingly, Defendant has established the first two prongs of plain error review, and we turn to whether the error affected his substantial rights.

To satisfy the third prong of plain error review, a defendant must typically show the error affected his substantial rights. *Samora*, 954 F.3d at 1292. In the context of a guilty plea, this means the defendant must show "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Nevertheless, "for certain structural errors undermining the fairness of a criminal proceeding as a whole" a defendant satisfies the third prong "without regard to the mistake's effect on the proceeding." *Id.* at 81. In those cases, not even "overwhelming evidence that the defendant would have pleaded guilty regardless" can save the conviction. *Id.* at 84 n.10. Defendant urges the district court's

4

failure to advise him of the nature of the charge constituted structural error because it rendered his plea unknowing and involuntary. To show his plea was unknowing and involuntary, Defendant relies on *Henderson v. Morgan*, 426 U.S. 637 (1976), and *Hicks v. Franklin*, 546 F.3d 1279 (10th Cir. 2008).

In *Henderson*, the Supreme Court held the defendant's plea to second-degree murder was involuntary because the defendant was not advised that second-degree murder required him to have the intent to cause the death of his victim. 426 U.S. at 645. During his plea colloquy, the defendant (a person classified as "retarded" by the state) asserted "that his plea was based on the advice of his attorneys, that he understood he was accused of killing Mrs. Francisco in Fulton County, that he was waiving his right to a jury trial, and that he would be sent to prison." *Id.* at 642. But "[t]here was no discussion of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with the [defendant], and no reference of any kind to the requirement of intent to cause the death of the victim." *Id.* at 642–43. In fact, there was some indication that the defendant did not intend to kill his victim, as defense counsel stated at sentencing that the defendant "meant no harm to that lady." *Id.* at 643. Thereafter, the defendant filed a collateral attack on his conviction, arguing his plea was involuntary because he was not advised that intent to cause death was an element of second-degree murder. *Id.* at 638–39.

Upon review, the Supreme Court held the plea was involuntary and entered without due process of law. *Id.* at 647. While the Court acknowledged that a trial court may not be required to read the defendant "a ritualistic litany of the formal legal

elements," it held that a reviewing court must nonetheless "examine the totality of the circumstances" and satisfy itself that "the substance of the charge, as opposed to its technical elements, was conveyed to the accused." *Id.* at 644. Because the defendant was not advised of the required intent for second-degree murder, the Court held his plea was involuntary. *Id.* at 645. The Court found the defendant's low mental capacity "foreclose[d] the conclusion that the error was harmless," because it lent support to the defendant's theory that he did not intend to kill his victim. *Id.* at 647.

In *Hicks*, we relied on *Henderson* to vacate a second-degree murder conviction where the Oklahoma state court failed to advise the defendant that "a depraved mind was an element of murder in the second degree." *Hicks*, 546 F.3d at 1287. We explained that a defendant can show his plea was involuntary under *Henderson* if he: (1) establishes that the omitted element was a critical element of the crime charged; (2) overcomes the presumption that his attorney explained the element to him at some time prior to his guilty plea; and (3) shows that, prior to entering his plea, he did not receive notice of the element from any other source. *Id.* at 1284 (citing *Allen v. Mullin*, 368 F.3d 1220, 1241 (10th Cir. 2004)). Given a context "closely analogous to *Henderson*," we found the defendant in *Hicks* carried his burden of showing his plea was involuntary. *Hicks*, 546 F.3d at 1287. We nonetheless cautioned that our decision "should not be construed to invite collateral attacks" on guilty pleas because "[i]t is a rare circumstance to have a critical element of the charge completely misstated by the trial court." *Id.* at 1287 n.6. It just so happened this case "present[ed] that rare situation." *Id.*

6

With this precedent in mind, we turn to the facts of this case. Defendant argues the outcome of this case is squarely governed by *Henderson* and *Hicks*. Like in *Henderson* and *Hicks*, the district court failed to advise Defendant of all the elements of the charge. Defendant argues this error rendered his plea unknowing, involuntary, and constitutionally invalid. *See Bousley v. United States*, 523 U.S. 614, 618 (1998) (explaining a plea is not "constitutionally valid" if the defendant does not receive real notice of the charge against him).

Even if we agree with Defendant that the court's failure to advise him of the knowledge-of-status element rendered his plea unknowing and involuntary, neither *Henderson* nor *Hicks* instruct us that such error is a structural error warranting automatic reversal "without regard to the mistake's effect on the proceeding." *See Dominguez Benitez*, 542 U.S. at 81. In fact, *Henderson* explicitly addressed prejudice to the defendant, explaining the defendant's low mental capacity "foreclose[d] the conclusion that the error was harmless" because it lent support to the defendant's theory that he did not intend to kill his victim. 426 U.S. at 647. Importantly, the defendants in both *Henderson* and *Hicks* were proceeding on collateral review, and thus, neither court applied plain error standards. *See* 426 U.S. at 638; 546 F.3d at 1280.

Nevertheless, Defendant suggests a footnote in *Dominguez Benitez* mandates automatic reversal when a plea is unknowing and involuntary, as he argues is the case here. It is true that, in the *Dominguez Benitez* footnote, the Supreme Court distinguished a typical Rule 11 error from the "constitutional question" of "whether a defendant's guilty plea was knowing and voluntary." 542 U.S. at 84 n.10. The Court

7

explained that "when the record of a criminal conviction obtained by a guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed." *Id.* Such a conviction cannot "be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless." *Id.* We are not persuaded, however, that the error at issue here falls in the narrow category of errors recognized by the *Dominguez Benitez* footnote.

When explaining that a Rule 11 error must be distinguished from the "constitutional question" of whether a plea is knowing and voluntary, the Supreme Court cites *Boykin v. Alabama*, 395 U.S. 238 (1969) as an example. *Id.* The facts of *Boykin* are readily distinguishable from those before us today. In *Boykin*, the defendant was charged with five counts of robbery, an offense punishable by death in Alabama. *Id.* at 239. At the defendant's arraignment, he pleaded guilty to all five counts. *Id.* The Alabama trial court accepted the defendant's plea without asking the defendant any questions concerning his plea, and the defendant did not address the court. *Id.*

On appeal, the Supreme Court held "[i]t was error, plain on the face of the record," for the trial judge to accept the defendant's guilty plea without "an affirmative showing that it was intelligent and voluntary." *Id.* at 242. The Court explained, "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered," and "[w]e cannot presume a waiver of these . . . important federal rights from a silent record." *Id.* at 243. Thus, the Court concluded the plea was unknowing and involuntary. *Id.* at 245.

8

The absence of any plea colloquy in *Boykin* cannot be compared to this case, however, where the district court engaged in an extensive and thorough plea colloquy, albeit neglecting to inform Defendant of an element of the charge. *See Dominguez Benitez*, 542 U.S. at 81 n.6 (explaining that "[t]he omission of a single Rule 11 warning without more is not colorably structural"). While the Supreme Court has acknowledged that a plea may also be rendered involuntary if the defendant "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt," *Henderson*, 426 U.S. at 645 n.13, the Court makes no mention of this latter type of voluntariness in the *Dominguez Benitez* footnote.[1] 542 U.S. at 84 n.10.

Upon review of the Supreme Court's structural error precedent, we have good reason to believe the Court intentionally omitted this latter type of voluntariness from the *Dominguez Benitez* footnote. The Supreme Court has instructed us that a structural error is one that "'affect[s] the framework within which the trial proceeds' rather than being 'simply an error in the trial process itself.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (alteration in original) (quoting *Arizona v. Fulminate*, 499 U.S. 279, 310 (1991)). Thus, a structural error "infect[s] the entire trial process." *Neder v. United States*, 527 U.S. 1, 9 (1999). Using this principle as a guidepost, the Court has distinguished between errors in reasonable doubt instructions and errors in other jury

---

[1] The *Dominguez Benitez* footnote does not cite *Henderson v. Morgan*, 426 U.S. 637 (1976), or *Bousley v. United States*, 523 U.S. 614 (1998), even though both cases address this latter type of voluntariness and were decided before *Dominguez Benitez*. *See* 542 U.S. at 84 n.10.

9

instructions. *See Johnson v. United States*, 520 U.S. 461, 469 (1997). Because an error in a reasonable doubt instruction "vitiate[s] all of the jury's findings," it is structural error. *Id.* But failing to instruct or improperly instructing the jury on an element of the offense does not vitiate *all* of the jury's findings, and therefore, the error is subject to harmless-error review. *Neder*, 527 U.S. at 10–11.

Applying this logic to the instant matter, we can readily distinguish between a case where the court engages in no plea colloquy at all, *see Boykin*, 395 U.S. at 242–45, and one where the court merely omits an element of the charge. When a court fails to engage in any plea colloquy, we are left to wonder whether the defendant understood the charge against him, the maximum statutory penalties he would face if convicted, the strength of the government's evidence, and the rights he was waiving by pleading guilty. By contrast, when the court merely omits an element of the offense, the court nonetheless advises the defendant of the charges he is facing (as a general matter), the maximum statutory penalties he would face if he were convicted, the strength of the government's evidence (or at least the factual basis for the plea), and the rights he is waiving by pleading guilty. We can thus analogize that a court's failure to engage in any plea colloquy at all "affect[s] the framework" within which the plea takes place, while omission of an element of the charge is "simply an error within the . . . process itself." *See Weaver*, 137 S. Ct. at 1907 (2017) (alteration in original) (quoting *Fulminate*, 499 U.S. at 310). The instant error does not permeate the entire proceeding, while failure to engage in any plea colloquy destroys the process altogether.

10

Accordingly, none of Defendant's cited authority persuades us that the district court's failure to advise him of the knowledge-of-status element constitutes structural error. While the error may have violated Defendant's constitutional right to due process, the Supreme Court has repeatedly recognized that constitutional errors are not always structural errors. *Fulminate*, 499 U.S. at 306. In fact, a "strong presumption" exists that even constitutional violations can be harmless. *Rose v. Clark*, 478 U.S. 570, 579 (1986). Given this strong presumption, the Supreme Court has applied the doctrine of structural error "only in a very limited class of cases." *Johnson*, 520 U.S. at 468; *see, e.g.*, *McCoy v. Louisiana*, 138 S. Ct. 1500, 1511 (2018) (attorney's admission of the defendant's guilt over the defendant's objection); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (deprivation of the right to counsel of choice); *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (erroneous reasonable-doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (exclusion of grand jurors of the defendant's race); *Waller v. Georgia,* 467 U.S. 39, 49 n.9 (1984) (deprivation of the right to a public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (deprivation of the right to self-representation); *Gideon v. Wainwright*, 372 U.S. 335, 343–45 (1963) (deprivation of the right to counsel); *Tumey v. Ohio,* 273 U.S. 510, 523 (1927) (lack of an impartial trial judge).

Upon our independent review, we find the error at issue here does not fit in this limited class of cases. We recognize this conclusion conflicts with the Fourth Circuit's

11

decision in *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020).[2] Nevertheless, for the following reasons, we are not persuaded we should expand the limited number of structural errors to include those in which a district court fails to inform a defendant of the knowledge-of-status element of a felon in possession charge under 18 U.S.C. § 922(g)(1).

In *Weaver v. Massachusetts*, the Supreme Court provided "three broad rationales" for classifying an error as a structural error. 137 S. Ct. at 1908. First, an error may be classified as structural where "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *Id.* Next, an error may be deemed structural if "the effects of the error are simply too hard to measure." *Id.* Finally, an error may be deemed structural if the error "always results in fundamental unfairness." *Id.* Any one of these rationales or a combination thereof may explain why an error has been deemed structural. *Id.*

Turning to these three rationales, we find the error in this case does not fit within them. First, the error does not fall in the category of errors where "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *Id.* This rationale has been applied primarily to a defendant's

---

[2] Since *Rehaif* was decided, our sister circuits have applied the plain error standard to cases like this without addressing whether the error is structural. *See, e.g.*, *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020); *United States v. Ward*, 796 F. App'x 591, 600 (11th Cir. 2019) (unpublished); *United States v. Davies*, 942 F.3d 871, 873 (8th Cir. 2019); *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019); *United States v. Denson*, 774 F. App'x 184, 184–85 (5th Cir. 2019) (unpublished). As far as we are aware, the Fourth Circuit is the only other circuit to have squarely addressed whether this type of error is structural in nature. *See Gary*, 954 F.3d at 201.

right to "make his own choices about the proper way to protect his own liberty." *Id.* For example, a defendant has the right to represent himself or to choose his own counsel, even though exercise of that right may "increase[] the likelihood of a trial outcome unfavorable to the defendant." *See id.* (citing *McKaskle*, 465 U.S. at 177 n.8); *see also Gonzalez-Lopez*, 548 U.S. at 149. We nonetheless protect the defendant's autonomy to make his own decisions because the Sixth Amendment "contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense." *See McCoy*, 138 S. Ct. at 1508 (alteration in original) (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979)).

This type of error arose in *McCoy v. Louisiana*, where defense counsel informed the jury that the defendant committed three murders, despite the defendant's resolve to maintain his innocence. 138 S. Ct. at 1506–07. Although the defendant told both his counsel and the court that he wished to maintain his innocence at trial, the court stated that defense counsel should make the decision of how to proceed. *Id.* at 1506–07. While defense counsel "reasonably believed that admitting guilt afforded [the defendant] the best chance to avoid a death sentence," the Supreme Court held counsel's admission of guilt violated the defendant's "protected autonomy right" because it "allowed counsel to usurp control of an issue within [the defendant's] sole prerogative." *Id.* at 1507, 1511. The Court held the error was structural because it "block[ed] the defendant's right to make the fundamental choices about his own defense." *Id.* at 1511.

13

The error at issue here does not restrict a defendant's autonomy in the same way that denial of the defendant's right to represent himself, select counsel of his choice, or maintain his innocence prevents him from being the master of his own defense. A court's omission of an element of the offense during a plea colloquy does not transform the defendant's decision to plea from his own choice to that of his counsel or the court. This type of error is fundamentally different from one where counsel (or the court) strips a defendant of his choice to plea or proceed to trial entirely. In the latter case, we can imagine such error would so impermissibly infringe upon the defendant's protected autonomy right as to be a structural error. But where the defendant chose to plea on his own accord—and was not coerced, threatened, or forced to plea—we cannot say the defendant's strategy was not his own. Accordingly, we find the first rationale does not support the conclusion this is structural error.

Turning to the second rationale, we find the court's failure to inform Defendant of the knowledge-of-status element does not have consequences that are "simply too hard to measure." *Weaver*, 137 S. Ct. at 1908. Examples of this type of error include exclusion of the defendant's race from the grand jury that indicted him, *see Vasquez*, 474 U.S. at 263, and a violation of the right to a public trial. *Weaver*, 137 S. Ct. at 1910; *see also Waller,* 467 U.S. at 49 n.9. The error in this case is not of a similar nature. Rather, the consequences of Rule 11 errors—errors that occur during a plea colloquy—are regularly measured and often held harmless. *See Dominguez Benitez*, 542 U.S. at 81 n.6 (explaining that "[t]he omission of a single Rule 11 warning without more is not colorably structural"). In fact, Rule 11 explicitly states that a "variance

14

from the requirements of this rule is harmless error if it does not affect [the defendant's] substantial rights." Fed. R. Crim. P. 11(h); *see also Dominguez Benitez*, 542 U.S. at 80 n.5 (explaining Congress included this harmless error exception to avoid "reversals for reasons that [are] too insubstantial").

In a case where the district court neglects to advise a defendant of a single element of a charge, the consequence of the error can be measured based on the strength of the government's evidence and the defendant's own admissions. For example, where the evidence supporting the defendant's knowledge-of-status is strong, or where the defendant admitted knowledge of his felony status, we can assume the defendant would have pleaded guilty even if he had been aware the government would be required to prove his knowledge of status. *See, e.g.*, *Fisher*, 796 F. App'x at 510–11 (where the defendant had been convicted of multiple felonies and spent over 30 years of his life in prison, he could not credibly claim "ignorance of his felon status"); *see also Williams*, 946 F.3d at 974 (holding that a "lack of plausible ignorance defense means that any § 922(g) defendant . . . will face an uphill battle to show that a *Rehaif* error in a guilty plea affected his substantial rights"). In contrast, if the evidence of a defendant's knowledge of his felony status is weak, we can presume his substantial rights were affected because he might have proceeded to trial if he had known the government would be required to prove he knew he was a felon. *See, e.g.*, *United States v. Balde*, 943 F.3d 73, 97 (2d. Cir. 2019) (holding that a defendant's substantial rights were affected when the defendant's felony status was "hotly contested"). Thus,

the effects of this type of error are measurable based on the government's evidence and the defendant's admissions.

Finally, we conclude failure to advise Defendant of the knowledge-of-status element does not render the plea fundamentally unfair. Errors that are fundamentally unfair include cases where, "an indigent defendant is denied an attorney" or "the judge fails to give a reasonable-doubt instruction." *Weaver*, 137 S. Ct. at 1908. These types of errors are structural because "the resulting trial is *always* a fundamentally unfair one." *Id.* (emphasis added). While we can imagine a scenario where failure to advise a defendant of the elements of a crime *could* render a proceeding unfair, it does not *necessarily* or *fundamentally* do so. For example, as we saw in *Henderson*, where a defendant could credibly allege he did not possess the requisite intent to commit the charged crime, it would be unfair to convict the defendant without informing him of the intent element. 426 U.S. 647 (holding the defendant's low mental capacity "foreclose[d] the conclusion that the error was harmless" because it lent support to the defendant's theory that he did not intend to kill his victim). But in a case where there is an abundance of evidence that tends to show the defendant knew of his relevant status, and no claim by the defendant otherwise, we cannot say the failure to advise the defendant of the knowledge-of-status element renders the plea fundamentally unfair.

For all these reasons, we conclude the error in this case is not a structural error. In so holding, we heed the Supreme Court's guidance that the structural error doctrine applies only to a "very limited class of cases," *Johnson*, 520 U.S. at 468, and that there is a "strong presumption" that constitutional errors can be harmless. *Rose*, 478 U.S. at

16

579. Without a more analogous case in which the Supreme Court has held such an error is structural, we decline to do so in the first instance. Accordingly, we proceed with the third prong of plain error review. Under the third prong, Defendant must show a reasonable probability that, but for the error, he would not have entered the plea. *Dominguez Benitez*, 542 U.S. at 83. Defendant cannot make that showing here.

Prior to the instant offense, Defendant was convicted of six felonies and sentenced to a term of 24 years' imprisonment, with 20 years suspended. R. Vol. II at 9. Defendant thus served a total of four years in prison for six felony offenses. *Id.* Defendant cannot credibly claim he was unaware that he was a felon, nor did he try to before the district court. In fact, Defendant admitted at sentencing, "I know I was doing wrong and in violation of the codes of me being a felon in possession of a firearm with intent to hold ammunition." R. Vol. III at 8. Defendant has not changed positions on appeal—he still does not suggest he was unaware of his felon status when he committed the instant offense. Given the strength of the Government's evidence, Defendant also cannot plausibly suggest he would have proceeded to trial if he knew the Government would be required to prove knowledge of status. Again, he does not claim as much on appeal. Therefore, Defendant cannot show a reasonable probability that, had he been advised of the knowledge-of-status element, he would not have entered the plea. *See Fisher*, 796 F. App'x at 510 (holding the defendant was not prejudiced by the district court's failure to inform him of the knowledge-of-status element because the defendant could not credibly "claim[] ignorance of his felon status"); *see also Williams*, 946 F.3d at 974 (holding that a "lack of plausible ignorance

17

defense means that any § 922(g) defendant . . . will face an uphill battle to show that a *Rehaif* error in a guilty plea affected his substantial rights"); *Burghardt*, 939 F.3d at 404 (holding that "if there is overwhelming proof establishing an element of the charged offense, a court's failure to describe that element during a Rule 11 plea colloquy does not by itself constitute plain error"). For these reasons, Defendant cannot satisfy the third prong of plain error review.

Because Defendant cannot satisfy the third prong of plain error review, we need not address the fourth prong. But even if Defendant could satisfy the third prong of plain error review, we would see no need to exercise our discretion to correct the error under the fourth prong. As the Supreme Court noted in *Johnson*, when the first three parts of plain error review are satisfied, "the appellate court must then determine whether the forfeited error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings' before it may exercise its discretion to correct the error." 520 U.S. at 469–70 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). As in *Johnson*, "that question must be answered in the negative." 520 U.S. at 470.

In *Johnson*, the Supreme Court addressed whether an appellate court should exercise its discretion to correct an otherwise plain error. *Id.* Reviewing the facts of the case, the Court explained that the evidence supporting the conviction was "overwhelming" and "uncontroverted." *Id.* Because the evidence was overwhelming and uncontroverted, the Court held the appellate court was within its discretion to decline to correct the error because the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* Rather, the Court explained

18

"it would be the reversal of a conviction such as this which would have that effect." *Id.* The same is true here. Where the evidence of Defendant's knowledge of his felony status is "overwhelming and uncontroverted," the real threat to the "fairness, integrity, and public reputation of judicial proceedings" would be if Defendant were permitted to withdraw from a plea unequivocally supported by the facts and for which Defendant has no defense. *See United States v. Cotton*, 535 U.S. 625, 634 (2002).

Accordingly, even if Defendant could satisfy the third prong of plain error review, we would decline to exercise our discretion to correct the error under the fourth prong. For these reasons, Defendant's conviction is affirmed.

II.

We turn now to Defendant's appeal from his sentence. Defendant argues, and the Government concedes, that the district court plainly errored by miscalculating Defendant's base offense level. Defendant argues this error resulted from the district court's misapplication of U.S.S.G. § 2K2.1(a)(1). We agree. And because this issue is not in dispute, we only briefly address the merits.

Because this claim was not raised before the district court, we apply plain error. As we previously stated, to establish plain error Defendant must show there is (1) an error, (2) that is plain, and (3) which affects his substantial rights. *Samora*, 954 F.3d at 1292. Once Defendant satisfies these three conditions, we will correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1293 (quoting *Benford*, 875 F.3d at 1016).

19

In this case, the district court plainly erred in calculating Defendant's base offense level. To calculate Defendant's base offense level, the district court applied U.S.S.G. § 2K2.1(a)(1). This guideline only applies where "the defendant committed any part of the instant offense *subsequent to* sustaining at least *two* felony convictions of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(1) (emphasis added). It is undisputed Defendant had only sustained one felony conviction of a crime of violence at the time he committed the instant offense. Accordingly, the district court committed error that is plain when it used U.S.S.G. § 2K2.1(a)(1) to calculate Defendant's base offense level.

This error affected Defendant's substantial rights because it increased his base offense level from 22 to 26. *Compare* U.S.S.G. § 2K2.1(a)(1) (setting a base offense level of 26 if the offense is committed subsequent to sustaining at least two felony convictions of a crime of violence), *with* U.S.S.G. § 2K2.1(a)(3) (setting a base offense level of 22 if the offense is committed subsequent to sustaining at least one felony conviction of a crime of violence). If Defendant's sentencing guidelines had been calculated using the correct base offense level, his resulting guideline range would have been 100 to 120 months' imprisonment.[3] *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table.

---

[3] With a criminal history category of V and a total offense level of 25, the advisory guideline range would have been 110 to 125 months' imprisonment. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table. The statutory maximum sentence, however, is 10 years. *See* 18 U.S.C. § 924(a)(2). Accordingly, the advisory guideline range becomes 110 to 120 months' imprisonment.

Instead, Defendant's advisory guideline range was erroneously calculated at 140 to 175 months' imprisonment. "[I]n most instances," this "application of an incorrect, higher Guidelines range" is sufficient to show prejudice under the third prong of plain error review. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016). While the Government, "remains free to 'poin[t] to parts of the record'—including relevant statements by the judge—'to counter any ostensible showing of prejudice,'" the Government has not done so here. *Id.* (citing *United States v. Vonn*, 535 U.S. 55, 68 (2002)). Rather, the Government concedes the error affected Defendant's substantial rights. Thus, Defendant has satisfied the third prong of plain error review.

Finally, we exercise our discretion to correct the error because it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Samora*, 954 F.3d at 1293 (quoting *Benford*, 875 F.3d at 1016). It is reasonably probable that the district court's error caused Defendant to receive a higher sentence, and "we can think of few things that affect . . . the public's perception of the fairness and integrity of the judicial process more than a reasonable probability an individual will linger longer in prison than the law demands only because of an obvious judicial mistake." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1335 (10th Cir. 2014). Accordingly, we remand for resentencing.

III.

For the reasons provided herein, Defendant's conviction is affirmed, and we remand for resentencing only.

21