**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

IRA LEE WILKINS,

      Defendant - Appellant.

No. 19-5114
(D.C. No. 4:19-CR-00116-JED-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MURPHY,** and **BACHARACH**, Circuit Judges.
_____

Mr. Ira Lee Wilkins was convicted of possessing a firearm after a felony conviction. *See* 18 U.S.C. § 922(g)(1). On appeal, Mr. Wilkins argues that the district court plainly erred before trial and at the sentencing.

Before trial, the attorneys stipulated to two elements: (1) a prior felony conviction and (2) knowledge of the prior felony conviction. The

---

[*]    We conclude that oral argument would not materially help us to decide the appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). So we have decided the appeal based on the record and the parties' briefs.

    Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

district court accepted these stipulations, but Mr. Wilkins argues that the district court shouldn't have accepted them without confirming that he had personally agreed. But even if the district court had erred, the error would not have affected the fairness, integrity, or public reputation of the judicial proceedings. We thus affirm the conviction.

At sentencing, the district court imposed supervised-release conditions, including inpatient treatment for drug abuse. Mr. Wilkins argues that the district court plainly erred by requiring inpatient treatment without particularized findings. Even if the district court had erred, however, the error would not have affected Mr. Wilkins's substantial rights. So we also affirm the sentence.

**1. Before trial, the district court accepted stipulations that Mr. Wilkins had a prior felony conviction and had known that the conviction was for a felony.**

On a charge of possessing a firearm after a felony conviction, the government must prove four elements: (1) the defendant had a prior conviction of a crime punishable by over a year in prison, (2) the defendant knew of the prior conviction, (3) the defendant knowingly possessed a firearm, and (4) the possession was in or affected interstate commerce. 18 U.S.C. § 922(g)(1); *see United States v. Trujillo*, 960 F.3d 1196, 1200–01 (10th Cir. 2020). Before trial, the district court accepted stipulations to the first two elements. But the district court did not read the stipulations aloud or ask Mr. Wilkins if he had agreed to them.

2

**2.    The jury found Mr. Wilkins guilty of possessing a firearm after a felony conviction.**

In light of the stipulations, the government did not present any evidence about the existence of a prior felony conviction or Mr. Wilkins's knowledge of his status as a convicted felon. But the content of the stipulations was mentioned three times.

The prosecutor referred to the stipulations in her opening statement: "The defendant has stipulated that he had been convicted of a crime we call a felony." R., vol. II at 86.

The district court then referred to the stipulations in the opening instructions to the jury:

> [T]he parties have stipulated that . . . [Mr. Wilkins] was a convicted felon, and knew that he was a convicted felon . . . . Therefore, [those] elements are proven beyond a reasonable doubt, and the government need not present evidence that the defendant was a convicted felon and knew that he was a convicted felon.

*Id.* at 88; *id.*, vol. I at 46.

After the evidence closed, the prosecutor referred to the substance of the stipulations in her closing argument.

But Mr. Wilkins never objected to the court's acceptance of the stipulations. With these stipulations, the jury returned a guilty verdict.

3

**3.      A presentence investigation report summarized Mr. Wilkins's criminal history and drug use.**

Before sentencing, a probation officer prepared a presentence report, which discussed Mr. Wilkins's criminal record and history of drug use.

According to the presentence report, Mr. Wilkins had seven prior sentences exceeding a year:

1.     second-degree burglary of a habitation (five years in prison),

2.     aggravated robbery (five years in prison),

3.     unlawful possession of a controlled substance (five years in prison),

4.     knowing concealment of stolen property (three years in prison),

5.     larceny of lost property (three years in prison),

6.     possession of forged notes or instruments (three years in prison), and

7.     driving under the influence of alcohol (second offense) (three years in prison).

The report also noted that for two of the convictions (second-degree burglary of a habitation and aggravated robbery), Mr. Wilkins had spent roughly 1–1/2 years in prison.

The presentence report not only listed the seven sentences exceeding a year but also described Mr. Wilkins's history of drug use. This history included

- daily use of marijuana, cocaine, and opiates; and

- occasional use of methamphetamine.

4

Mr. Wilkins did not object to these parts of the presentence report, and the district court adopted them. On appeal, Mr. Wilkins does not question these parts of the presentence report.

**4.    At sentencing, the district court imposed a special condition requiring inpatient drug treatment.**

At the sentencing, Mr. Wilkins asked for residential drug treatment while in prison. The district court recommended approval of residential drug treatment, pointing to Mr. Wilkins's "history of substance abuse." *Id.*, R., vol. II at 69–71. The court also imposed

- a prison term of 70 months and

- supervised-release terms, including inpatient treatment for drug abuse.

**5.    We review both issues for plain error.**

Mr. Wilkins did not object when the district court accepted the stipulations and imposed inpatient drug treatment. So we review both issues for plain error. *See United States v. Mason*, 85 F.3d 471, 472 (10th Cir. 1996) (stipulation to an element); *United States v. Koch*, 978 F.3d 719, 724 (10th Cir. 2020) (adoption of a special condition of supervised release). Under the plain-error standard, we can reverse only if (1) the court committed an error, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness,

integrity, or public reputation of judicial proceedings. *Koch*, 978 F.3d at 724.

**6.     Even if the district court had obviously erred by accepting the stipulations, the error would not have affected the fairness, integrity, or public reputation of judicial proceedings.**

The Constitution requires the government to prove every element of the offense, *United States v. Gaudin*, 515 U.S. 506, 510 (1995), but a defendant may waive this requirement by stipulating to an element, *Mason*, 85 F.3d at 472–73. The district court can accept the stipulation only if the defendant personally agreed to it. *See Johnson v. Cowley*, 40 F.3d 341, 346 (10th Cir. 1994) (stating that "if a stipulation is made, the court must determine whether the defendant agreed to it").

Mr. Wilkins argues that the district court plainly erred by accepting the stipulations without confirming his agreement.[1] But even if Mr. Wilkins had satisfied the first three prongs of the plain-error standard, his argument would have failed at the fourth prong.[2]

---

[1]     Before the district court accepted the stipulations, Mr. Wilkins had twice indicated his displeasure with his attorney. First, Mr. Wilkins had filed an "Invocation of Rights" and asked the court to require defense counsel to furnish him with all of the case records. Second, defense counsel had told the court that Mr. Wilkins "wishe[d] to have [counsel] withdrawn." R., vol. II at 25. Mr. Wilkins then addressed the court, stating that defense counsel had not done anything asked, had "not conferred," and had not provided any representation. *Id.* at 27. The court responded that "it was just too late" to address Mr. Wilkins's request for withdrawal of his counsel. *Id.* at 29.

[2]     The parties disagree on

6

At this prong, we conclude that an error would not have seriously affected the fairness, integrity, or public reputation of judicial proceedings because the presentence report supplied overwhelming and uncontroverted support for the stipulations.

The presentence report shows that Mr. Wilkins had seven previous convictions with sentences exceeding one year.[3] *See* Part 3, above. For two

---

- whether the district court made an obvious error and

- whether an error affected Mr. Wilkins's substantial rights.

In discussing whether an error would have affected substantial rights, the parties take different approaches.

Mr. Wilkins argues that we should consider only the trial evidence. The Second and Seventh Circuit Courts of Appeal support this approach. *United States v. Miller*, 954 F.3d 551, 558 (2d Cir. 2020); *United States v. Maez*, 960 F.3d 949, 961 (7th Cir. 2020). In contrast, the government asks us to follow the Fifth Circuit, which has allowed judicial notice of the facts of a prior felony conviction. *United States v. Staggers*, 961 F.3d 745, 755 & n.1 (5th Cir. 2020), *cert. denied*, No. 20-5051, 2020 WL 5883456 (U.S. Oct. 5, 2020). But we need not decide whether prong three limits our review to the trial evidence because Mr. Wilkins has not satisfied the fourth prong.

[3]      In a letter of supplemental authorities, Mr. Wilkins argues for the first time that we should confine ourselves to the trial record when considering the fourth prong of the plain-error standard. This argument is too late. In responding to the opening brief, the government relied on excerpts from the presentence report. Mr. Wilkins filed a reply brief, but he did not suggest that the court's consideration of the fourth prong should be limited to the trial record. At the time, all of the circuit courts to consider the issue had held that courts could look beyond the trial record to analyze the fourth prong. *See Miller*, 954 F.3d at 560; *Maez*, 960 F.3d at 949, 963; *United States v. Owens*, 966 F.3d 700, 706–07 (8th Cir. 2020).

7

of these convictions, he spent roughly 1–1/2 years in prison. *See id.* Given the numerous sentences exceeding one year and actual incarceration of more than a year on two of the convictions, Mr. Wilkins could not reasonably challenge the existence of a prior felony conviction or his knowledge that he had been convicted of a felony. *See United States v. Trujillo*, 960 F.3d 1196, 1208 (10th Cir. 2020) (noting that a defendant who had six felony convictions and had served four years in prison "[could not] credibly claim he was unaware that he was a felon").

Because the presentence report supplied overwhelming, uncontroverted evidence of the stipulated elements, Mr. Wilkins has not satisfied the fourth prong. *See id.* at 1208–09 ("Where the evidence of Defendant's knowledge of his felony status is 'overwhelming and uncontroverted,' the real threat to the 'fairness, integrity and public reputation of judicial proceedings' would be if Defendant were permitted

---

After we decided to forgo oral argument, Mr. Wilkins filed a letter of supplemental authorities, pointing out that the Third Circuit had recently created a circuit split by restricting itself to the trial evidence when considering the fourth prong of the plain-error standard. *United States v. Nasir*, ___ F.3d ___, 2020 WL 7041357, at *11–18 (3d Cir. Dec. 1, 2020) (en banc). But it was too late to inject this issue through the letter of supplemental authorities. *See United States v. Hernandez*, 847 F.3d 1257, 1262 (10th Cir. 2017) ("It is well established that we will not consider issues raised for the first time in a Rule 28(j) letter . . . because, in part, the language of Rule 28(j) underscores that an appellant's supplemental authority must relate to an issue previously raised in a proper fashion." (quoting *Thacker v. Workman*, 678 F.3d 820, 842 (10th Cir. 2012))).

to withdraw from a plea unequivocally supported by the facts . . . ." (quoting *United States v. Cotton,* 535 U.S. 625, 634 (2002)).[4] We thus reject this claim at the fourth prong of the plain-error standard.

### 7. Even if the district court had obviously erred by ordering inpatient treatment without particularized findings, the error would not have affected Mr. Wilkins's substantial rights.

Mr. Wilkins also argues that the district court obviously erred by ordering inpatient drug treatment without making particularized findings. For the sake of argument, we can assume that the district court had committed an obvious error. Even with this assumption, however, Mr. Wilkins would have needed to show an effect on his substantial rights. *See*

---

[4]     Mr. Wilkins argues that "where a constitutional error has affected the defendant's substantial rights, thus satisfying the third prong of the plain error test, 'it is ordinarily natural to conclude that the fourth prong is also satisfied and reversal is necessary.'" *United States v. Miller*, 891 F.3d 1220, 1237 (10th Cir. 2018) (quoting *United States v. Gonzalez–Huerta*, 403 F.3d 727, 745 (10th Cir. 2005)), *cert. denied*, 139 S. Ct. 1219 (2019). We assume for the sake of argument that the third prong was satisfied. *See United States v. Gaudin*, 515 U.S. 506, 510 (1995).

But this assumption does not affect the outcome. In *Johnson v. United States,* 520 U.S. 461 (1997), the U.S. Supreme Court considered a similar issue. There one element of the petitioner's offense was not submitted to the jury, violating the constitutional requirement to prove each element of the offense. 520 U.S. at 467–68. The Supreme Court assumed that the petitioner had satisfied the third prong of the plain-error standard. *Id.* at 469. Even with this assumption, the Court recognized that the evidence of guilt had been "overwhelming" and "uncontroverted." *Id.* at 470. Given the overwhelming, uncontroverted evidence of guilt, the Court upheld the conviction at the fourth prong of the plain-error standard even if the third prong had been satisfied. *Id.*

9

Part 5, above. For that showing, Mr. Wilkins needed to establish a reasonable probability that the process of making particularized findings would have led the district court to forgo a requirement of inpatient treatment. *United States v. Koch*, 978 F.3d 719, 730 (10th Cir. 2020).

We assume for the sake of argument that the district court could impose inpatient treatment only upon a particularized finding of compelling circumstances. *See id.* at 725 (stating that "when a court imposes a special condition that invades a fundamental right or liberty interest, the court must justify the condition with compelling circumstances"); *cf. United States v. Bear*, 769 F.3d 1221, 1231 (10th Cir. 2014) (stating that inpatient treatment affects a significant liberty interest). Given this assumption, we consider whether the district court had a basis to find compelling circumstances. *Koch*, 978 F.3d at 729 (citing *United States v. Francis*, 891 F.3d 888, 898 (10th Cir. 2018)).

The record supported some kind of drug treatment: The presentence report showed a lengthy history with illegal drugs, and the sentencing guidelines recommended drug treatment if the district court had reason to believe that the defendant had abused drugs. U.S.S.G. § 5D1.3(d)(4); *see United States v. Henry*, 979 F.3d 1265, 1270–71 (10th Cir. 2020). But treatment can be inpatient or outpatient, and the two vary. *See United States v. Riccio*, 567 F.3d 39, 40 (1st Cir. 2009) (stating that outpatient mental treatment materially differs from inpatient mental treatment).

10

Inpatient treatment entails a "greater infringement[] on a defendant's liberty than outpatient . . . care or other more routine treatment and assessment tools." *Bear*, 769 F.3d at 1230.

One could arguably question the necessity of inpatient treatment. After all, supervised release will begin only after Mr. Wilkins has spent almost six years in prison[5] and home confinement or community corrections. During that time, he may be able to obtain treatment, as the district court recommended. *See* 18 U.S.C. § 3621(b) ("The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."). By the time that he is released, inpatient treatment might prove unnecessary.[6]

Despite that possibility, we conclude that Mr. Wilkins has not shown a reasonable probability that he would have obtained a different sentence

---

[5] The Bureau of Prisons may shorten Mr. Wilkins's sentence for satisfactory behavior. 18 U.S.C. § 3624(b).

[6] Mr. Wilkins also argues that the record does not show a need for inpatient treatment, pointing out that the Bureau of Prisons has provided nonresidential treatment for many drug addicts. *See* Christopher J. Mumola and Jennifer C. Karberg, Drug Use and Dependence, State and Federal Prisoners, 2004, Bureau of Justice Statistics at 2 tbl.2 and 7 tbl. 5 (Oct. 2006), www.bjs.gov/content/pub/pdf/dudsfp04.pdf; Bureau of Prisons, Program Statement 7430.02: Community Transitional Drug Abuse Treatment (April 14, 1999), https://www.bop.gov/policy/progstat/7430_002.pdf. But the Bureau of Prisons' policy does not bind the district court.

11

but for the district court's error. The district court considered Mr. Wilkins's request for residential treatment and had at least some basis to find compelling circumstances. These circumstances included Mr. Wilkins's history of drug abuse, which starting with marijuana when he was just thirteen years old and escalated in adulthood to methamphetamine and daily use of cocaine and opiates. Despite this escalation of drug use, the district court had to assess the need for inpatient treatment years in advance.

In assessing that need, the court would presumably have considered Mr. Wilkins's request for residential treatment during his prison term. Though the court recommended such treatment, the ultimate decision on placement lay with the Bureau of Prisons. 18 U.S.C. § 3621(e); 28 C.F.R. § 550.53(e). And the court pointed out that Mr. Wilkins might not stay in prison long enough to obtain residential treatment.[7] So the court had reason

---

[7] Mr. Wilkins argues that the prison term was long enough to obtain treatment. But placement in the program lay within the discretion of the prison's Drug Abuse Program Coordinator, 28 C.F.R. § 550.53(e), and the warden retains discretion to find any inmate ineligible for participation in the program, 28 C.F.R. § 550.53(a)(3). Even if Mr. Wilkins were chosen for residential treatment, he could participate only if adequate resources existed. In the past, other courts have noted that prisoners' demand for residential drug treatment exceeded availability. *E.g.*, *Close v. Thomas*, 653 F.3d 970, 972–73 (9th Cir. 2011); *see also* Drug Abuse Treatment Program, 81 Fed. Reg. 24,484–02, 24,488, 2016 WL 1625949 (Apr. 26, 2016) (stating that over 5,000 inmates were on the wait list for the prison system's program of residential drug treatment); Drug Abuse Treatment Program: Subpart Revision and Clarification and Eligibility of D.C. Code Felony Offenders for Early Release Consideration, 74 Fed. Reg. 1,892–01,

to believe that Mr. Wilkins might not otherwise obtain adequate treatment despite his need.

Given the escalating drug use and uncertainty of residential treatment in prison, the court had at least some basis to find compelling circumstances. In light of the basis for this finding, we conclude that Mr. Wilkins did not show an effect on his substantial rights. We thus reject his challenge to the condition requiring inpatient drug treatment.

* * *

We affirm, concluding that Mr. Wilkins failed to satisfy the plain-error standard for either the conviction or the requirement of inpatient drug treatment.

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

1,893, 2009 WL 76657 (Jan. 14, 2009) (noting that over 7,000 inmates were on the wait list for the prison system's program of residential drug treatment). We thus have no way of knowing whether Mr. Wilkins will be able to participate in the Bureau of Prisons' residential drug-treatment program despite the district court's recommendation.